# EXHIBIT A

E-FILED IN OFFICE - TB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**25-C-04947-S2**

**4/22/2025 12:36 PM**

**TIANA P. GARNER, CLERK**

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | |
|---|---|
| OVINCE SAINT PREUX, | DIVISION: |
| Plaintiff, | CASE NO.:    25-C-04947-S2 |
| v. | |
| JARED WHEAT, HI-TECH PHARMACEUTICALS, INC., HI-TECH NUTRACEUTICALS, LLC, JOHN DOES 1 – 5 and ABC CORPORATIONS 1 - 5 (entities whose exact identities are unknown at present but will add by substitution when ascertained), | |
| Defendants. | |

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, Ovince Saint Preux, (hereafter, "Saint Preux"), by and through undersigned counsel, and hereby files this Complaint for Damages and Demand for Jury Trial against Defendants JARED WHEAT and HI-TECH PHARMACEUTICALS, INC. (hereafter, "Hi-Tech") and HI-TECH NEUTRACEUTICALS, INC. Plaintiff also names JOHN DOES 1 – 5 and ABC CORPORATIONS 1 - 5 (entities whose exact identities are unknown at present but will add by substitution when ascertained) out an abundance of caution, as some of this information has been withheld by Defendants and the Department of Justice. In support thereof, Plaintiff states as follows:

## INTRODUCTION

This civil action arises from a career and life altering notice that Plaintiff received as a result of drug tests which occurred on June 17, 2023 and July 11, 2023, when Plaintiff, a professional UFC fighter, was found to be in violation of the UFC Anti-Doping Policy after receiving two positive tests for prohibited substances. Ovince Saint Preux voluntarily submitted these samples on June 17, 2023 and July 11, 2023 in advance of a fight scheduled to occur on August 6, 2023.

Upon discovery of prohibited ingredients, an investigation was commenced, thereby requesting that Plaintiff submit these supplements for further analysis at the World Anti-Doping Agency-accredited laboratory in Salt Lake City, Utah. The United States Anti-Doping Agency (hereinafter "USADA") ordered separate samples from Defendants, which also confirmed Defendant's products were the source of the positive drug tests. The foreign substances found within Defendant's products were not reflected on the label or otherwise disclosed and are prohibited by law. This toxic chemical included 3a-hydroxy-5a-androst-1-en-17-one (a long-term metabolite of 1-Androstenedione and/or 1-Testosterone). Defendants had a history of similar misconduct and malfeasance. Plaintiff sues for damages.

## PARTIES, JURISDICTION AND VENUE

1.      This is an action for damages in tort and contract.

2.      Plaintiff, Ovince Saint Preux, is an adult resident of Knoxville, Knox County, Tennessee, but submits to the jurisdiction of this court.

3.      Ovince Saint Preux has experienced tremendous success both in and out of the octagon as a professional fighter, track star, football player, wrestler, kickboxer and submission grappler.

4.      Ovince Saint Preux bought supplements from Defendants in preparation for fighting in a sanctioned, promoted, professional UFC fight on August 6, 2023, in his home state of Tennessee.

5.      Defendant HI-TECH PHARMACEUTICALS, INC., has been registered as a Georgia Domestic Profit Corporation since 1998, operating at 6015-B Unity Drive, in Norcross, Gwinnett County, Georgia.

6.      Defendant HI-TECH NEUTRACEUTICALS, INC. is of unknown corporate status, and appears to be an alias of HI-TECH PHARMACEUTICALS, INC., but is sued out of an abundance of caution.

7.      Jared Wheat is its principal owner and founder of both HI-TECH PHARMACEUTICALS, INC. and HI-TECH NEUTRACEUTICALS, INC.

8.      In multiple lawsuits and indictments, Mr. Wheat has been named as personally responsible for the actions of his solely owned corporation and has thus been named personally in this matter.

9.      Mr. Wheat and Hi-Tech have repeatedly been under the scrutiny of the Federal Trade Commission, Food and Drug Administration and Department of Justice for decades, related to product marketing, disclosures and disclaimers.

10.     Further, a class action was recently filed arising from alleged deceptive, unfair and misleading promotion of Hi-Tech revolving around the use of paid, but undisclosed endorsements.

11.     Another class action seeks damages based on improper product distribution, contamination and/or labeling.

12.     According to its website, "Hi-Tech Pharmaceuticals is a leading Sports Nutrition

manufacturer."

13.    Further, Defendants claim, "Since 1997, Hi-Tech Pharmaceuticals, Inc. and its sister company, Hi-Tech Nutraceuticals, LLC. have been providing quality custom manufacturing services to the pharmaceutical, dietary supplement and beverage industries."

14.    Hi-Tech Pharmaceuticals maintains, "(T)wo Georgia based production facilities are both located outside Atlanta in the Norcross and Suwanee Advanced Technology areas."

15.    By its own admissions, "Hi-Tech Pharmaceuticals creates, manufactures and sells high-quality products sold by large, major retailers across the United States. These retailers include: Amazon.com, GNC, Rite Aid, Vitamin Shoppe, Vitamin World, KMart, Albertson's, CVS, Meijer, Hannaford, Cardinal Health, McKesson, Mclain, Harmon Stores, Winn-Dixie, Supervalu, Roundy's, Sav-On Drugs, Fruth Pharmacy and over 5,000 independent drug stores, as well as 80,000 convenience stores throughout the United States."

16.    Hi-Tech boasts it provides, "The finest-quality, innovative, science-based Sports Nutritional Supplements and Diet & Energy Aids."

17.    Additionally, Defendants' website notes, "Hi-Tech boasts a portfolio of over fifty state-of-the-art nutritional supplements that offer real solutions in the areas of muscle and strength development, fat loss, sexual performance and healthcare. Hi-Tech develops world-class, novel nutraceuticals that are "Found in Nature...Backed by Science™". Hi-Tech is dedicated to setting a higher standard of scientific excellence for the dietary supplement industry. Hi-Tech's product line is aimed at improving life-quality and our nutraceuticals are unmatched in quality and efficacy, yet without pharmaceutical prices! Hi-Tech responds to the varying nutrient demands of men and women, from an active lifestyle to that of the well-conditioned athlete."

4

**GOVERNMENT INDICTMENTS & INJUNCTIONS**

18.     Jared Wheat was imprisoned twice as a teenager for distributing ecstasy and then violating probation. See https://www.icij.org/investigations/pandora-papers/belize-american-offshore-glenn-godfrey-law-firm/.

19.     After setting up Hi-Tech Pharmaceuticals, Wheat set up companies in Belize where he made substantial profits, on, "pharmaceutical and dietary supplement sales throughout the world."

20.     In Belize, Wheat was ultimately charged with money laundering in connection to the business, and was acquitted.

21.     On September 16, 2003, the United States sought an injunction against Hi-Tech Pharmaceuticals, and others, to prevent them from introducing or delivering any new or misbranded drugs into interstate commerce. See United States Of America, Plaintiff, V . Hi-Tech Pharmaceuticals, Inc., National Urological Group, Inc., National Institute For Clinical Weight Loss, Inc., American Weight Loss Clinic, Inc., United Metabolic Research Center, Inc., And Jared R . Wheat, Case 1:03-cv-02789-RLV.

22.     The Department of Justice prosecutors specifically noted Defendant Jared Wheat was the President, a member of the Board of Directors, and a major stockholder for all defendant corporations and, "Defendant Wheat is responsible for all product specifications, product labeling, sales, and marketing."

23.     Defendants consented to the injunction while denying the allegations contained therein.

24.     In 2004, the Federal Trade Commission filed a complaint against the company and Jared Wheat for allegedly making weight-loss and other health-related efficacy claims about

three dietary supplements without adequate scientific evidence.

25.     Hi-Tech was ordered to pay $15.9 million in disgorgement and consumer redress, which has since been fully collected. The court also entered a permanent injunction prohibiting the company from further violating the Federal Trade Commission Act and from making future efficacy claims about any dietary supplement without "competent and reliable scientific evidence" to back them up.

26.     After this resolved, the FTC accused Hi-Tech and Sweat of violating the injunction by making unsubstantiated efficacy claims about four new weight-loss supplements. After multiple hearings and appeals, a federal judge entered an order and judgment holding Hi-Tech in civil contempt and imposed $40 million in equitable monetary relief in 2017.

27.     On September 7, 2006, the U.S. Attorney filed a Superseding Indictment against Mr. Wheat, Hi-Tech and others in the United States District Court of Georgia (Northern District). See United States v. Jared White, et al., Case 1:06-cr-00382-JTC-LTW, Document 1. It charged 45 separate counts of violations. The Indictment charged:

    a.      Conspiracy (Counts 1-2),

    b.      Continuing a Criminal Enterprise (Count 3),

    c.      Mail Fraud (Counts 4-13),

    d.      Introduction of Unapproved Drugs (Counts 14-23) and

    e.      Introduction of Adulterated Drugs (Counts 24-33, 42).

28.     The indictment spent many pages briefing the Controlled Substances Act and The Federal Food, Drug, And Cosmetic Act, alongside Defendants violations of same.

29.     In a plea bargain, Defendants admitted to operating a manufacturing facility in Belize that made generic versions of universally government-regulated pharmaceuticals such as

Xanax, Valium, Ambien, Vioxx, Zoloft, Viagra and Cialis and selling them over the internet, including within the United States, without requiring prescriptions.

30. On February 3, 2009, the federal court entered Judgment on Court 1, Conspiracy to Commit Mail and Wire 1 Fraud and to Introduce and Deliver Unapproved New and Adulterated Drugs into Interstate Commerce.

31. Counts 2, 3, 5 through 14, 15 through 24, 25 through 35, and 36 through 43 dismissed on the motion of the United States as part of the plea bargain.

32. As a result, the U.S. Attorney's Office declined to prosecute assertions that Hi-Tech's lines of herbal dietary supplements which were carried by many major U.S. retailers as well as thousands of convenience stores had been spiked with ephedrine alkaloids and other controlled substances, even after the U.S. Food and Drug Administration banned their use.

33. Department of Justice attorneys also contended, on record, that Wheat and others at Hi-Tech conspired to murder a U.S. Food and Drug Administration agent and blackmail a former assistant U.S. attorney general. That allegation surfaced in court documents filed in March 2006 by prosecutors in response to Wheat's bid to be released on bond.

34. Hi-Tech Pharmaceuticals Inc.'s President and CEO Jared Wheat, Vice President Stephen D. Smith, and company co-founder Tomasz Holda, all pleaded guilty to conspiring to import and distribute adulterated, mislabeled and unapproved new drugs and to commit mail and wire fraud. Sergio Oliveira, a sales associate who worked out of the company's headquarters, similarly pleaded guilty.

35. It is unknown which employees were similarly involved in this incident.

36. On January 20, 2009, the court ordered forfeiture of: (1) 3,000,000.00 in United States currency; and (2) all machinery, equipment, supplies, and non-herbal pharmaceutical

7

ingredients formerly connected with the operation of Target Data Processing, Ltd., in Ladyville, Belize, and presently stored in Belize. See United States v. Jared White, et al., Case 1:06-cr-00382-JTC-LTW, Document 747.

37.     On January 30, 2009, Wheat was sentenced to a term in prison along with a term of three years of supervised release. Defendant completed his prison sentence and began his supervised release on March 11, 2011.

38.     For purposes of this civil case, this crime constitutes a felony and could constitute a crime of moral turpitude. It certainly shows similar prior acts, intent to defraud the public and knowledge of the law prohibiting these acts.

39.     On March 5, 2013, Mr. Wheat filed a Motion to Terminate Supervised Release. It noted, "Pursuant to the plea agreement in this case the forfeiture has been fully satisfied as the government has agreed to accept over $2,000,000 of the forfeiture from a bank account in Panama and the balance of the forfeiture has been paid to the government." See United States v. Jared White, et al., Case 1:06-cr-00382-JTC-LTW, Document 896.

40.     Mr. Wheat was ultimately released and worked at rebuilding Hi-Tech for a couple years, including buying out other supplement companies, before being indicted a second time. The second federal case is still pending.

41.     On September 28, 2017, the U.S. Attorney filed a Superseding Indictment against Mr. Wheat and Hi-Tech in the United States District Court of Georgia (Northern District). See United States v. Jared White, et al., Case 1:17-cr-00229-AT-CMS, Document 7. It charged:

    a.     Count 1: Conspiracy to Commit Wire Fraud,

    b.     Counts 2-3: Wire Fraud,

    c.     Count 4: Money Laundering Conspiracy,

d.      Counts 5-9: Money Laundering,

e.      Count 10: Conspiracy to Introduce Misbranded Drugs into Interstate Commerce,

f.      Count 11: Introduction into Interstate Commerce of a Misbranded Drug,

g.      Count 12: Conspiracy to Manufacture and Distribute Controlled Substances,

h.      Counts 13-15: Manufacturing and Distributing Controlled Substances and

i.      Counts 16-18: Introducing Misbranded Drugs into Interstate Commerce.

42.      By Order of that Court, on October 4, 2017, the Court prohibited Defendant Hi-Tech Pharmaceuticals, Inc., ("Hi-Tech") from, "directly or indirectly through third parties, manufacturing, distributing or selling adulterated foods or misbranded drugs, including but not limited to products containing DMAA or its chemical equivalent. This includes but is not limited to: purchasing or receiving DMAA ingredients; and manufacturing, processing, packaging, marketing, or distributing food or dietary supplement products containing DMAA or its chemical equivalent."

43.      The Indictment claimed Jared Wheat and HI-TECH sought to enrich themselves unjustly by distributing to prospective and current customers, via email, false, fraudulent, and misleading documents and representations regarding the regulatory compliance of HI-TECH and its products, including false, fraudulent, and misleading FDA Certificates of Free Sale, GMP certificates, and GMP audit reports.

44.      And the Indictment claimed, "WHEAT and SCHOPP caused false and fraudulent documents purporting to be FDA Certificates of Free Sale to be delivered via email to customers and prospective customers of HI-TECH."

9

45.     The Indictment also claimed, WHEAT caused HI-TECH manufactured and produced, among other things, Choledrene, which was labeled and marketed as a dietary supplement.

46.     And further, "In fact, the Choledrene manufactured and produced by HI-TECH, at the direction of WHEAT, contained lovastatin, the active ingredient in several FDA-approved prescription drugs. Lovastatin was not listed as an ingredient on HI-TECH's labeling of Choledrene. Due to the presence of lovastatin, Choledrene was not a "dietary supplement" under the FDCA, and instead was a "drug" because it was an article other than food intended to affect the structure or function of the human body."

47.     In other words, Defendants knowingly "spiked" diet supplements with undisclosed controlled substances in order to illegally "super power" over the counter supplements, thus creating more demand for their products over those of competitors.

48.     Plaintiff contends Defendants repeated this misconduct, "spiking" body recover or body building supplements with different undisclosed controlled substances in order to illegally "super power" over the counter supplements, thus creating more demand for their products over those of competitors.

49.     Success breeds repeat customers and dependence.

50.     Consumers therefore could not and cannot properly evaluate risks, side effects, overdose, mixing chemicals with other chemicals and essentially are being poisoned without notice, warning or concern.

51.     Further, the indictment accused Wheat and Hi-Tech of the, "knowing and intentional manufacture, distribute, and dispense, and possess with the intent to manufacture, distribute, and dispense, anabolic steroids, which are Schedule I I I Controlled Substances, in

10

violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(E)." It attached these

charts:

| COUNT | DATE | PRODUCTS/ SCHEDULE III CONTROLLED ANABOLIC STEROIDS |
|---|---|---|
| 13 | 9/30/16 | (a) 1-AD/androstanedione and boldione<br><br>(b) 1-Testosterone/androstanedione and boldione<br><br>(c) Androdiol/4-androstenediol and/or 5-androstenediol |
| 14 | 10/10/16 | (a) Superdrol/androstanedione<br><br>(b) Equibolin/4-androstenediol and/or 5-androstenediol |
| 15 | 8/21/17 | (a) 1-AD/4-androstenediol and/or 5-androstenediol<br><br>(b) Androdiol/4-androstenediol and/or 5-androstenediol<br><br>(c) Superdrol/androstanedione, 4-androstenediol and/or 5-androstenediol, and boldione<br><br>(d) Equibolin, 4-androstenediol and/or 5-androstenediol |

| COUNT | DATE | MISBRANDED DRUG/ SCHEDULE III CONTROLLED ANABOLIC STEROIDS NOT DECLARED AS INGREDIENT | SHIPMENT |
|---|---|---|---|
| 16 | 9/30/16 | (a) 1-AD/androstanedione and boldione<br><br>(b) 1-Testosterone/androstanedione and boldione<br><br>(c) Androdiol/4-androstenediol and/or 5-androstenediol | GA to FL |

11

| COUNT | DATE | MISBRANDED DRUG/ SCHEDULE III CONTROLLED ANABOLIC STEROIDS NOT DECLARED AS INGREDIENT | SHIPMENT |
|---|---|---|---|
| 17 | 10/10/16 | (a) Superdrol/androstanedione<br><br>(b) Equibolin/ 4-androstenediol and/or 5-androstenediol | GA to FL |
| 18 | 8/21/17 | (a) 1-AD/4-androstenediol and/or 5-androstenediol<br><br>(b) Androdiol/4-androstenediol and/or 5-androstenediol<br><br>(c) Superdrol/androstanedione, 4-androstenediol and/or 5-androstenediol, and boldione<br><br>(d) Equibolin/ 4-androstenediol and/or 5-androstenediol | GA to NC |

52.     As such, Defendants have been charged with doing the matters alleged herein to others. Plaintiff does not appear to be a victim referenced in the government's case.

53.     A second superseding indictment was returned on December 3, 2024. See United States v. Jared White, et al., Case 1:17-cr-00229-AT-CMS, Document 514. It charged:

   a.     Count 1: Conspiracy to Commit Wire Fraud,

   b.     Counts 2-3: Wire Fraud,

   c.     Count 4: Money Laundering Conspiracy,

   d.     Counts 5-9: Money Laundering,

   e.     Count 10: Conspiracy to Introduce Misbranded Drugs into Interstate Commerce,

   f.     Count 11: Introduction into Interstate Commerce of a Misbranded Drug,

   g.     Count 12: Conspiracy to Manufacture and Distribute Controlled

12

Substances,

h. Counts 13-16: Manufacturing and Distributing Controlled Substances,

i. Count 17: Conspiracy to Introduce Adulterated Food into Interstate Commerce and

j. Counts 18: Introducing Adulterated Food into Interstate Commerce.

54. It is substantially similar, but updated many of the allegations related to the facts, amounts and controlled substances at issue.

55. Among Mr. Wheat's bond conditions is the requirement that he not manufacture, distribute, or sell "adulterated foods or misbranded drugs."

56. Recently, the government filed a motion in the criminal action to modify Mr. Wheat's bond conditions, arguing that he has been violating his bond by continuing to sell "adulterated" products containing parts per million of illegal anabolic steroids.

57. On February 7, 2025, the court in the criminal action granted the government's motion in part, prohibiting Mr. Wheat and Hi-Tech from manufacturing and/or distributing five specific products, while denying the government's request for a recall of these products.

58. Most recently as of April 7, 2025, the parties and court were proceeding with the criminal case. Trial is scheduled for October 20, 2025.

## LAWSUITS

59. It would take Plaintiff too long to brief all of the lawsuits brought against Mr. Wheat and/or Hi-Tech where false disclosures, impropriety and mislabeling or contamination were alleged.

60. However, Plaintiff notes a 2010 lawsuit brought against Mr. Wheat and Hi-Tech's employees where the Defendants Mr. Wheat and Hi-Tech responded and claimed, "From 2005

13

through the present day, Defendants Hi-Tech and Wheat have been (in) litigation with the Federal Trade Commission over whether certain of Hi-Tech's advertising was false or unsubstantiated. Judgment was entered against Hi-Tech and Wheat in an amount in excess of 15 million dollars. The case is currently pending on certiorari before the U.S. Supreme Court. See Molina et al, v. Hi-Tech Pharmaceuticals, Inc.; Hi-Tech Publishing, Inc.; Affiliated Distribution, Inc.; and Jared Wheat, Case 1:09-cv-01914-TCB, Document 53.

61.    The allegations in the referenced lawsuit stated Defendant's manufacturing manager told several Hispanic employees they were being terminated because Mr. Wheat's home was robbed by a Hispanic male and, "Defendant Wheat's wife no longer wanted any Hispanic men working for Defendants." See Molina et al, v. Hi-Tech Pharmaceuticals, Inc.; Hi-Tech Publishing, Inc.; Affiliated Distribution, Inc.; and Jared Wheat, Case 1:09-cv-01914-TCB, Document 1.

62.    On February 18, 2025, Mr. Wheat and Hi-Tech sued The United States Food and Drug Administration, Sara Brenner as Acting Commissioner thereof, The United States Department of Health and Human Services and Robert F. Kennedy, Jr., as the Secretary thereof.

63.    Mr. Wheat sued the above-named Defendants, "for their arbitrary and capricious action in attempting to regulate the dietary supplement ingredient DMHA (also known as 2-aminoisoheptane HCl, 1,5-DMHA, 2-amino-6-methylheptane, 2-amino-5- methylheptane, 1,5-Dimethylhexylamine, and 2-Isooctyl amine) without engaging in the rulemaking procedures required by law."

64.    As noted in the action filed by Defendants Mr. Wheat and Hi-Tech also face class action lawsuits as a result of their business practices.

## LYMAN GOOD LAWSUIT

65.    On October 19, 2017, a UFC fighter named Lyman Good filed a lawsuit against various parties claiming a contaminated supplement caused him to be suspended by the UFC.

66.    Specifically, Lyman Good sued Hi-Tech Pharmaceuticals, Inc. and others, including a company Wheat acquired and operated under. Good claimed the Defendants intentionally deceived consumers into believing they manufactured superior "dietary supplements." Instead, harmful, illegal drugs were added in order to increase sales in the competitive dietary supplements industry.

67.    Good further claimed, Defendants made false and misleading representations as the supplement he bought, "contain(ed) androstenedione ("Andro"), which (was) not disclosed on the label and is prohibited for use by certain mixed martial arts ("MMA") athletes."

68.    The Compliant noted, "Andro is a synthetic, androgenic-anabolic steroid that can cause muscle growth and severe, potentially lethal medical conditions. It is a "drug" under the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seg., a "controlled substance" under Controlled Substances Act ("CSA"), 21 U.S.C. § 801 et seq., and a "banned substance" from certain U.S. sports since 2006. Under the FDCA, "dietary supplements containing androl] are adulterated."

69.    Good alleged, "The goal of Defendants' conduct is to deceive consumers into believing that Anavite is a superior dietary supplement so that consumers continue to buying the product and generate revenue for Defendants. GNI Defendants disregard safety because they know that consumers judge by labels and results, hence their selling point: "our products work better than our competitors."

70.    Good did not mince words, alleging, "Defendants initiated and have continued this

15

fraudulent scheme of adulteration and steroid distribution despite prior and ongoing lawsuits against them for similar conduct, as they appear to believe that this scheme is still profitable. For this reason, Plaintiff seeks injunctions and punitive damages to punish and deter the repeated, unlawful behavior of Defendants."

71.    Unfortunately for Mr. Good, his expert was not properly experienced, the sample wasn't properly preserved and the evidence from the criminal cases were unknown.

**OVINCE SAINT PREAUX**

72.    Ovince Saint Preux was born April 8, 1983 in Immokalee, Florida.

73.    Saint Preux attended Immokalee High School, where he wrestled, played defensive end for the football team, and ran track. As a wrestler, he compiled a record of 26–1, and was the state's 1A runner-up in his weight class. During his senior year in football, he registered 75 tackles, including a school-record 18 sacks, and was named All-State. In track, he competed in the 110-meter hurdles, the 300-meter hurdles, the discus throw, and the 4x400 relay.

74.    Saint Preux played college football for the University of Tennessee from 2001 to 2004. After redshirting in 2001, he played both defensive end and linebacker. He still calls Tennessee home and has made a career off of his reputation as an athlete.

75.    Saint Preux graduated in 2004 with a degree in sociology, and began to train in kickboxing and submission grappling at the age of 21. He has competed in the light heavyweight and heavyweight divisions of the UFC, challenging once for the interim UFC Light Heavyweight Championship.

76.    A professional competitor since 2008, Saint Preux has also formerly competed for Strikeforce, the XFC, and Shark Fights. He is known for his unorthodox fighting style and has gained notability and notoriety for having won four fights using the rare Von Flue

16

choke submission out of eight finishes in UFC history, leading to fans renaming it to the "Von Preux choke".

77.    In 2021, UFC.com called Plaintiff, "One of the most active fighters on the UFC roster." Saint Preux's 15 victories in UFC light heavyweight competition are tied with Ryan Bader for third-most in divisional history behind Jon Jones (20) and Glover Teixeira (16). Saint Preux's 11 stoppage victories in UFC light heavyweight competition are second most in divisional history behind Teixeira (13). Saint Preux's five submission victories in UFC light heavyweight competition are tied for third-most in divisional history behind Teixeira (seven) and Craig (six). Saint Preux's four submission victories by Von Flue choke are the most in UFC/WEC/PRIDE/Strikeforce combined organizational history. Saint Preux's four submission victories by Von Flue choke are the most in UFC history. Saint Preux's two technical submission victories in UFC competition are tied for second most in company history behind Frank Mir (three). Saint Preux has earned four of the eight Von Flue choke submissions in UFC history. Jason Von Flue, Jordan Rinaldi, Alonzo Menifield and Cory McKenna also won with the technique.

78.    Saint Preux has made 26 UFC appearances, including an interim light heavyweight championship loss to Jon Jones at UFC 197 in April 2016.

79.    Instead of the positive news he was used to, on September 18, 2023, ESPN and other national reporters focused on his suspension. "Saint Preux tested positive for a long-term metabolite of either androstenedione and/or testosterone," media noted.

80.    Plaintiff was scheduled to face Ion Cutelaba at the UFC's August 5, 2023 fight card before being pulled from the bout.

81.    Saint Preux had spent a particularly grueling and dedicated time training for this

17

fight, given a couple of recent losses. His team spent 24 hours a day on a regimen of preparation.

82.    The six-month suspension not only cost him fight revenue, but marketing opportunities and emotional distress and ridicule.

83.    The missed fight was also particularly disappointing, as he was set to fight in his home state before fans, friends and Tennessee loyalists in Bridgestone Arena in Nashville, Tennessee. Cancellation of his fight disappointed countless fans and supporters. It was only the promotion's sixth visit to Nashville and first since UFC Fight Night: Thompson vs. Pettis in March 2019.

## THE PURCHASE

84.    Hi-Tech is a manufacturer or seller of Tongkat Ali and Fadogia Agrestris.

85.    Plaintiff purchased Tongkat Ali and Fadogia Agrestris manufactured and marketed by Defendants.

86.    These were the bottles purchased by Plaintiff.

 




87.     Plaintiff read the ingredients and made sure there was no banned or prohibited substances included, described or listed thereon.

88.     Plaintiff relied on marketing by Hi-Tech that their products were safe, particularly for athletes.

89.     Hi-Tech made promises and statements on Tongkat Ali and Fadogia Agrestris' packaging and through marketing and advertising.

90.     The labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and the contract. There were further implied warranties which were relied upon by Plaintiff.

91.     Plaintiff was unaware of the history of Hi-Tech and Defendants failed to warn Plaintiff of the history of violations, lies, mislabeling and criminal investigations.

92.     Plaintiff would not have purchased Tongkat Ali and Fadogia Agrestris had he known the true nature of their ingredients and history of the company and its management.

19

**POSITIVE TEST; ATTRIBUTED TO DEFENDANTS**

93.    The U.S. Anti-Doping Agency (USADA) is the national anti-doping organization (NADO) in the United States for Olympic, Paralympic, Pan American, and Parapan American sport. They administered the UFC Anti-Doping Program from 2015 through 2023, including at the times of this incident.

94.    On September 18, 2023, USADA announced that Ovince Saint Preux accepted a six-month sanction for unintentional violation of the UFC's Anti-Doping Policy after testing positive for a prohibited substance.

95.    Saint Preux tested positive for 3α-hydroxy-5α-androst-1-en-17-one (a long-term metabolite of 1-Androstenedione and/or 1-Testosterone), as the result of urine samples collected out-of-competition on June 17, 2023, and July 11, 2023.

96.    Because Saint Preux was not yet notified of his first positive test when his second test was collected, the two positive tests are combined into a single violation, as required under the UFC Anti-Doping Policy.

97.    During an investigation into the circumstances of the positive test, Saint Preux provided samples of Defendant's products. Same was analyzed by USADA at their accredited laboratory in Salt Lake City, Utah.

98.    Although no prohibited substances were listed on the supplement label, the analysis revealed that the product contained 1-Androstenedione, consistent with the metabolite for which Saint Preux tested positive.

99.    USADA was able to independently obtain a sealed container of the product from the same lot number and confirmed it was also contaminated. See https://www.usada.org/sanction/ovince-saint-preux-accepts-second-doping-sanction/.

20

**ANDRO**

100.    Androstenedione ("Andro") is an androgen like testosterone. Androgens are "male" sex steroids because they stimulate or control the development and maintenance of male, secondary sex characteristics.

101.    Andro is also an anabolic-androgenic steroid ("anabolic steroid"). Anabolic steroids are synthetic androgens and variants of testosterone that induce anabolic or androgenic responses in the body. "Anabolic" refers to muscle building, and "androgenic" refers to male sex characteristics.

102.    Use of Anabolic steroids without the strict regulation by doctors is illegal. Use of Anabolic steroids for non-medical needs is illegal.

103.    Medical use is legal in the United States is guided by Federal Drug Administration ("FDA") regulation and law.

104.    "Doping" or "steroid abuse" is the nonmedical use of anabolic steroids, typically for athletic performance enhancement or bodybuilding. This is extremely dangerous and potentially lethal.

105.    Short-term steroid abuse can cause body swelling, an increased risk of tendinitis and tendon rupture, severe acne, infections or diseases via injection (such as HIV or hepatitis), and psychiatric disorders, such as paranoid jealousy, extreme irritability, delusions, impaired judgment, addiction, depression, extreme mood swings, aggression, and violent rage (commonly known as "roid rage").

106.    Long-term abuse can cause serious and permanent, health problems, such as: kidney failure; liver damage, toxicity, and tumors; heart enlargement; high blood pressure; increased low-density lipoprotein (LDL) cholesterol ("bad" cholesterol); decreased high-density

21

lipoprotein (HDL) cholesterol ("good" cholesterol): increased risk of stroke and heart attack; and mood disorders.

107.    Withdrawal symptoms for steroid use include mood swings, fatigue, restlessness, irritability, loss of appetite, decreased libido, insomnia, and serious (sometimes suicidal) depression.

108.    Congress passed the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, 84 Stat. 1236 (Oct. 27, 1970), which consists of the Controlled Substances Act of 1970, 21 U.S.C. § 801 er seq., and provisions regarding imports and exports (collectively, "CSA"), to prohibit various activities in controlled substances.

109.    A "controlled substance" is "a drug or other substance, or immediate precursor" in schedule I, II, III, IV, or V, excluding alcohol products and tobacco. See id. § 802(6).

110.    The Controlled Substances Act assigns each controlled substance to one of the five schedules based on the substance's potential for abuse, accepted medical use, and potential for psychological and physical dependence. See id. § 812(a).

111.    Schedule III includes controlled substances that (A) have, "a potential for abuse less than [those] . . . in schedules I and II," (B) have "a currently accepted medical use in treatment in the United States," and (C) "may lead to moderate or low physical dependence or high psychological dependence." Id. § 812(b)(3).

112.    The Anabolic Steroids Control Act of 1990, Pub. L. 101-647, Title XIX, § 1901, 104 Stat. 4851 (Nov. 29, 1990), amended the CSA to, among other things, define "anabolic steroid" and add specific anabolic steroids to schedule III. See 21 U.S.C. §§ 802(41)(A), 812.

113. The Anabolic Steroid Control Act of 2004, Pub. L. 108-358 118 Stat. 1661, (Oct. 22, 2004) amended the CSA by slightly redefining "anabolic steroid," which is current, see 21 U.S.C. § 802(41)(A), and listing more anabolic steroids, such as Andro, see 802(41)(A)(iv)(I).

114. An "anabolic steroid" is "any drug or hormonal substance, chemically and pharmacologically related to testosterone." 21 U.S.C. § 802(41)(A).

115. The Designer Anabolic Steroid Control Act of 2014, Pub. L. 113-260, 128 Stat. 2929 (Dec. 18, 2014) added more anabolic steroids to schedule III, and prohibits the "[false labeling of anabolic steroids" that would otherwise legally be in commerce under the CSA, 21 U.S.C. § 825(e).

116. Andro is a "drug" under the FDCA. See 21 U.S.C. § 321(g)(1).

117. The FDCA defines "drug," id., in relevant part, as:

> ... (B) [A]rticles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man . . . ; and (C) articles (other than food) intended to affect the structure or any function of the body of man . . . ; and (D) articles intended for use as a component of any article specified in clause (A), (B), or (C).

118. Andro is also a non-food article intended to affect the structure and functions of the human body. See § 321(g)(1).

119. It is unlawful to introduce or deliver for introduction into interstate commerce an unapproved new drug, such as Andro. See 21 U.S.C. § 331(d) (citing 21 U.S.C. § 355).

120. Andro is also a "prescription drug" because it is "a drug for human use subject to section 353(b)(1) of this title." 21 U.S.C. § 360eee.

121. Under 21 U.S.C. § 353(b)(1):

> A drug intended for use by man which—
>
> (A) because of its toxicity or other potentiality for harmful effect . ... is not safe for use except under the supervision of a practitioner licensed by

23

law to administer such drug; ... shall be dispensed only (i) upon a [] prescription of a practitioner licensed by law to administer such drug .... The act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act which results in the drug being misbranded while held for sale.

122.    Andro is a known, universally banned substance under USADA.

123.    The World Anti-Doping Agency ("WADA") was established in 1999 as an international, independent agency that seeks to ensure doping-free sports participation. WADA develops anti-doping capacities and monitors compliance with the World Anti-Doping Code (the "Code"). The Code, effective since January 1, 2004, includes anti-doping policies and rules for sports organizations and among public authorities worldwide.

124.    The Code mandates the publication and enforcement of an annual List of Prohibited Substances and Methods ("Prohibited List"). The substances on that list are known as "banned substances." WADA first added Andro to the 2006 Prohibited List.

125.    In 2001, Congress recognized the United States Anti-Doping Agency (USADA) as the official anti-doping agency for Olympic, Pan American, and Paralympic sport

126.    in the United States." Section 644 of the Treasury and General Government Appropriations Act, 2002, Pub. L. 107-67, 115 Stat. 514 (Nov. 12, 2001). USADA is a compliant signatory to the Code and therefore, enforces the Prohibited List.

127.    On July 1, 2015, the drug-testing policy of the UFC became effective. The UFC selected USADA as the independent administrator for the policy, which was modeled after the Code and bans Andro.

128.    USADA and the Department of Defense each maintain a "High Risk" list of dietary supplements that contain banned substances. As of around June 2017, Anavite was added to both

24

databases. As a result of this incident, this product was also added to the "High Risk" list of dietary supplements that contain banned substances.

## COUNT I
## NEGLIGENCE PER SE AGAINST ALL DEFENDANTS

129. Plaintiff repeats and realleges paragraphs 1 through 128 above as if stated herein.

130. Negligence *per se* arises under Georgia law when a statute or ordinance is violated.

131. The violation of certain mandatory regulations may also amount to negligence *per se* if the regulations impose a legal duty.

132. State and federal law present numerous protections to consumers of products protecting them from mislabeling, failure to properly list ingredients, improper marketing, fraud and improper use of controlled substances and ingredients.

133. Many of those laws are cited above.

134. This isn't a "one-time" issue with Defendants. It is a pattern and practice for which they have repeatedly been investigated in this district.

135. Plaintiff falls within the class of persons these laws were intended to protect.

136. The harm complained of is the harm the statutes, laws and ordinances are intended to guard against.

137. The failure to adhere to FTC and FDA guidelines, along with federal and state law caused Plaintiff's injuries and damages.

138. Plaintiff incurred lost revenue, lost past and future income, bodily injury by the toxic undisclosed substance, resulting pain and suffering, mental anguish, inconvenience and loss of capacity for the enjoyment of life. These damages were experienced in the past and is to be experienced in the future, as well lost wages and earnings.

25

139. Plaintiff also incurred the risk of other disease and bodily dysfunction and future medical expenses as a result to the toxic substances he ingested. These medical expenses will reasonably include charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and other services.

WHEREFORE, Plaintiff, OVINCE SAINT PREUX, demands judgment against Defendants, JARED WHEAT, HI-TECH PHARMACEUTICALS, INC., HI-TECH NUTRACEUTICALS, LLC, JOHN DOES 1 – 5 and ABC CORPORATIONS 1 - 5, for compensatory damages, including interest, cost, and for such relief as this Court deems just and proper.

## COUNT II
## STRICT LIABILITY AGAINST ALL DEFENDANTS

140. Plaintiff repeats and realleges paragraphs 1 through 128 above as if stated herein.

141. Georgia statutes provide for strict liability for defective products.

142. Specifically, *O.C.G.A. § 51-1-11(b)(1)* states that a manufacturer is liable in tort to, "any natural person who may use, consume, or reasonably be affected by the property" and who suffers an injury to her person or property, "because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained."

143. Wheat HI-TECH and other Defendants manufactured, marketed and distributed Tongkat Ali and Fadogia Agrestris.

144. As sold, the Tongkat Ali and Fadogia Agrestris' purchased by Plaintiff was not merchantable and reasonably suited to the use intended.

145. The product was contaminated with regulated, controlled or otherwise prohibited substances without disclosure that these contaminants were included.

26

146.    The defective condition proximately caused plaintiff's injury."

147.    Either Defendants knew or should have known Andro was included in its products or had no procedures to prevent contamination.

148.    A Plaintiff can show that a product was "not merchantable" through any of three variations of product defects: manufacturing defects, design defects or marketing/packaging defects.

149.    Plaintiff contends all three defects as noted and described herein- manufacturing defects, design defects or marketing/packaging defects.

150.    Plaintiff incurred lost revenue, lost past and future income, bodily injury by the toxic undisclosed substance, resulting pain and suffering, mental anguish, inconvenience and loss of capacity for the enjoyment of life. These damages were experienced in the past and is to be experienced in the future, as well lost wages and earnings.

151.    Plaintiff also incurred the risk of other disease and bodily dysfunction and future medical expenses as a result to the toxic substances he ingested. These medical expenses will reasonably include charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and other services.

WHEREFORE, Plaintiff, OVINCE SAINT PREUX, demands judgment against Defendants, JARED WHEAT, HI-TECH PHARMACEUTICALS, INC., HI-TECH NUTRACEUTICALS, LLC, JOHN DOES 1 – 5 and ABC CORPORATIONS 1 - 5, for compensatory damages, including interest, cost, and for such relief as this Court deems just and proper.

## COUNT III
## BREACH OF EXPRESS WARRANTY AGAINST ALL DEFENDANTS

27

152.    Plaintiff repeats and realleges paragraphs 1 through 128 above as if stated herein.

153.    Hi-Tech and other Defendants is/are a manufacturer, seller and/or distributer of Tongkat Ali and Fadogia Agrestris.

154.    Hi-Tech and other Defendants breached express warranties about Tongkat Ali and Fadogia Agrestris and their qualities because Defendants' omissions and statements about Tongkat Ali and Fadogia Agrestris were false.

155.    Defendants breached express warranties because Tongkat Ali and Fadogia Agrestris do not conform to Defendants' affirmations and promises made in marketing and on the label.

156.    Plaintiff would not have purchased Tongkat Ali and Fadogia Agrestris had he known the true nature of their ingredients.

157.    "DIETARY SUPPLEMENT" is one such promise and statement of fact on the labeling and in the marketing and advertising of Tongkat Ali and Fadogia Agrestris. The statement promises and states the fact that, among other things, the products do not contain any drugs.

158.    "DIETARY SUPPLEMENT" is a false statement of fact and broken promise because Tongkat Ali and Fadogia Agrestris contains the drug Andro, so Tongkat Ali and Fadogia Agrestris are not dietary supplements.

159.    Plaintiff reasonably relied on that stated fact and promise.

160.    Plaintiff, when he purchased Tongkat Ali and Fadogia Agrestris, performed all conditions precedent to liability herein.

161.    Defendants' breach of that and other express warranties caused Plaintiff irreparable damage. Plaintiff has and will lose substantial income in "fight purses," as well as well as sponsorships.

28

162.    Plaintiff suffered irreparable damage to his reputation and career, and severe emotional distress.

163.    Plaintiff was a role model to children and adult martial artists and students. Since June 17, 2023, Plaintiff's reputation has been damaged, as evidenced, in part, by emails, media attention, and social media content from third-parties.

164.    Plaintiff incurred lost revenue, lost past and future income, bodily injury by the toxic undisclosed substance, resulting pain and suffering, mental anguish, inconvenience and loss of capacity for the enjoyment of life. These damages were experienced in the past and is to be experienced in the future, as well lost wages and earnings.

165.    Plaintiff also incurred the risk of other disease and bodily dysfunction and future medical expenses as a result to the toxic substances he ingested. These medical expenses will reasonably include charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and other services.

WHEREFORE, Plaintiff, OVINCE SAINT PREUX, demands judgment against Defendants, JARED WHEAT, HI-TECH PHARMACEUTICALS, INC., HI-TECH NUTRACEUTICALS, LLC, JOHN DOES 1 – 5 and ABC CORPORATIONS 1 - 5, for compensatory damages, including interest, cost, and for such relief as this Court deems just and proper.

## COUNT IV
## NEGLIGENT MANUFACTURING DEFECT AGAINST ALL DEFENDANTS

166.    Plaintiff repeats and realleges paragraphs 1 through 128 above as if stated herein.

167.    Plaintiff asserts a claim for negligent manufacturing defect.

168.    Defendants had a legal duty to conform to a standard of conduct for the protection of others against an unreasonable risk of harm.

29

169.    Contamination of supplements is breach of that standard.

170.    Failure to properly disclose ingredients is breach of that standard.

171.    These failures were unknown to Plaintiff and he relied on the ingredients and marketing to avoid contamination with prohibited or controlled substances.

172.    Plaintiff experienced losses and damages as a result of the breach of the legal duty.

173.    Defendants failed to manufacture with reasonable care such that the products were not reasonably safe for intended or foreseeable uses.

174.    Plaintiff suffered irreparable damage to his reputation and career, and severe emotional distress.

175.    Plaintiff was a role model to children and adult martial artists and students. Since June 17, 2023, Plaintiff's reputation has been damaged, as evidenced, in part, by emails, media attention, and social media content from third-parties.

176.    Plaintiff incurred lost revenue, lost past and future income, bodily injury by the toxic undisclosed substance, resulting pain and suffering, mental anguish, inconvenience and loss of capacity for the enjoyment of life. These damages were experienced in the past and is to be experienced in the future, as well lost wages and earnings.

177.    Plaintiff also incurred the risk of other disease and bodily dysfunction and future medical expenses as a result to the toxic substances he ingested. These medical expenses will reasonably include charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and other services.

WHEREFORE, Plaintiff, OVINCE SAINT PREUX, demands judgment against Defendants, JARED WHEAT, HI-TECH PHARMACEUTICALS, INC., HI-TECH NUTRACEUTICALS, LLC, JOHN DOES 1 – 5 and ABC CORPORATIONS 1 - 5, for

30

compensatory damages, including interest, cost, and for such relief as this Court deems just and proper.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST ALL DEFENDANTS

178.    Plaintiff repeats and realleges paragraphs 1 through 128 above as if stated herein.

179.    In Georgia, a warranty of merchantability is implied in any sale of goods or contract for the sale of goods. O.C.G.A. § 11-2-314.

180.    The supplements purchased by Plaintiff were subject to the warranty and were manufactured and distributed from Georgia.

181.    The goods were defective in that they were contaminated with an undisclosed substance.

182.    The goods were defective in that they contained controlled substances which should not have been available as a mere supplement.

183.    Plaintiff's injuries and losses were caused by the defective goods.

184.    Plaintiff purchased the supplements from the manufacturer and the logo for Hi-Tech and its descriptions and brand clearly appear on all packaging.

185.    Further, the manufacturer extends an express warranty to the buyer through all of its open marketing to consumers, holding that it is "safe," especially for athletes.

186.    The Defendants' website and other marketing is filled with claims promising and offering terms upon which Plaintiff relied.

187.    Plaintiff suffered irreparable damage to his reputation and career, and severe emotional distress.

31

188.    Plaintiff was a role model to children and adult martial artists and students. Since June 17, 2023, Plaintiff's reputation has been damaged, as evidenced, in part, by emails, media attention, and social media content from third-parties.

189.    Plaintiff incurred lost revenue, lost past and future income, bodily injury by the toxic undisclosed substance, resulting pain and suffering, mental anguish, inconvenience and loss of capacity for the enjoyment of life. These damages were experienced in the past and is to be experienced in the future, as well lost wages and earnings.

190.    Plaintiff also incurred the risk of other disease and bodily dysfunction and future medical expenses as a result to the toxic substances he ingested. These medical expenses will reasonably include charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and other services.

WHEREFORE, Plaintiff, OVINCE SAINT PREUX, demands judgment against Defendants, JARED WHEAT, HI-TECH PHARMACEUTICALS, INC., HI-TECH NUTRACEUTICALS, LLC, JOHN DOES 1 – 5 and ABC CORPORATIONS 1 - 5, for compensatory damages, including interest, cost, and for such relief as this Court deems just and proper.

## COUNT VI
## BREACH OF EXPRESS WARRANTY AGAINST ALL DEFENDANTS

191.    Plaintiff repeats and realleges paragraphs 1 through 128 above as if stated herein.

192.    Plaintiff asserts a claim for breach of express warranty. Under Georgia's version of the Uniform Commercial Code, an express warranty is:

a.    Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

32

b.    Any description of the goods which is made part of the basis of the bargain

creates an express warranty that the goods shall conform to the description.

c.    Any sample or model which is made part of the basis of the bargain creates

an express warranty that the whole of the goods shall conform to the sample

or model. See O.C.G.A. § 11-2-313.

193.    Importantly, Defendants' website includes several promises and warranties, including a full page that it runs a certified, approved, good facility.



194.    Defendants further claim:

a.    "Hi-Tech develops world-class, novel nutraceuticals that are "Found in

Nature...Backed by Science™"."

b.      "Hi-Tech is dedicated to setting a higher standard of scientific excellence for the dietary supplement industry."

c.      Hi-Tech's product line is aimed at improving life-quality and our nutraceuticals are unmatched in quality and efficacy, yet without pharmaceutical prices!"

d.      Hi-Tech responds to the varying nutrient demands of men and women, from an active lifestyle to that of the well-conditioned athlete."

e.      "Here at Hi-Tech we take pride in making sure that each and every customer has a positive experience."

f.      "Customers can order with confidence and peace-of-mind knowing that your money is going toward buying only the highest quality dietary supplements available."

195.    The prior lawsuit(s) and criminal case(s) show clear and repetitive notice of the defect.

196.     The prior lawsuit(s) and criminal case(s) show a reasonable opportunity to repair the defect.

197.    Further, agents of the UFC and USADA made Defendant aware of these issues.

198.    Hi-Tech, third-party retailers and named Defendants from whom Plaintiff purchased Tongkat Ali and Fadogia Agrestris are merchants of goods of a kind, that kind being dietary supplements.

199.    Tongkat Ali and Fadogia Agrestris are not merchantable because they are: illegal due to misbranding, adulterated, and a controlled substance and drug in violation of federal laws; dangerous; unfit for its ordinary purpose of improving health with only dietary ingredients; below

34

fair, average quality due to adulteration; inadequately labeled; fails to conform to the promise and affirmation of fact based on the label, "dietary supplement."

200.    Defendants are liable to Plaintiff for restitution and consequential damages, as described above.

201.    Plaintiff suffered irreparable damage to his reputation and career, and severe emotional distress.

202.    Plaintiff was a role model to children and adult martial artists and students. Since June 17, 2023, Plaintiff's reputation has been damaged, as evidenced, in part, by emails, media attention, and social media content from third-parties.

203.    Plaintiff incurred lost revenue, lost past and future income, bodily injury by the toxic undisclosed substance, resulting pain and suffering, mental anguish, inconvenience and loss of capacity for the enjoyment of life. These damages were experienced in the past and is to be experienced in the future, as well lost wages and earnings.

204.    Plaintiff also incurred the risk of other disease and bodily dysfunction and future medical expenses as a result to the toxic substances he ingested. These medical expenses will reasonably include charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and other services.

WHEREFORE, Plaintiff, OVINCE SAINT PREUX, demands judgment against Defendants, JARED WHEAT, HI-TECH PHARMACEUTICALS, INC., HI-TECH NUTRACEUTICALS, LLC, JOHN DOES 1 – 5 and ABC CORPORATIONS 1 - 5, for compensatory damages, including interest, cost, and for such relief as this Court deems just and proper.

**COUNT VII**

35

**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AGAINST ALL DEFENDANTS**

205.    Plaintiff repeats and realleges paragraphs 1 through 128 above as if stated herein.

206.    Georgia's codification of the Uniform Commercial Code provides that, unless excluded or modified, warranties for the fitness for a particular purpose are implied in contracts for the sale of goods.

207.    Georgia's Supreme Court has explained that "the implied warranties of the UCC arise out of a contract for the sale of goods."

208.    Hi-Tech and other Defendants herein had reason to know that Plaintiff relied on the skill or judgment of the nutritional shop where he purchased the Tongkat Ali and Fadogia Agrestris to select or furnish suitable goods.

209.    Hi-Tech sold Tongkat Ali and Fadogia Agrestris, or caused Tongkat Ali and Fadogia Agrestris to be sold — which contained the dangerous and non-dietary ingredient Andro — to Plaintiff.

210.    The supplements purchased by Plaintiff were subject to the warranty and were manufactured and distributed from Georgia.

211.    The goods were defective in that they were contaminated with an undisclosed substance.

212.    The goods were defective in that they contained controlled substances which should not have been available as a mere supplement.

213.    The particular purpose warranted was not aligned with putting undisclosed, banned substances in the supplement.

214.    Plaintiff's injuries and losses were caused by the defective goods, as they were not in compliance with what was marketed and disclosed.

215.    Plaintiff purchased the supplements from the manufacturer and the logo for Hi-Tech and its descriptions and brand clearly appear on all packaging.

216.    Further, the manufacturer extends an express warranty to the buyer through all of its open marketing to consumers, holding that it is "safe," especially for athletes.

217.    The Defendants' website and other marketing is filled with claims promising and offering terms upon which Plaintiff relied.

218.    Plaintiff suffered irreparable damage to his reputation and career, and severe emotional distress.

219.    Plaintiff was a role model to children and adult martial artists and students. Since June 17, 2023, Plaintiff's reputation has been damaged, as evidenced, in part, by emails, media attention, and social media content from third-parties.

220.    Plaintiff incurred lost revenue, lost past and future income, bodily injury by the toxic undisclosed substance, resulting pain and suffering, mental anguish, inconvenience and loss of capacity for the enjoyment of life. These damages were experienced in the past and is to be experienced in the future, as well lost wages and earnings.

221.    Plaintiff also incurred the risk of other disease and bodily dysfunction and future medical expenses as a result to the toxic substances he ingested. These medical expenses will reasonably include charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and other services.

WHEREFORE, Plaintiff, OVINCE SAINT PREUX, demands judgment against Defendants, JARED WHEAT, HI-TECH PHARMACEUTICALS, INC., HI-TECH NUTRACEUTICALS, LLC, JOHN DOES 1 – 5 and ABC CORPORATIONS 1 - 5, for compensatory damages, including interest, cost, and for such relief as this Court deems just and

proper.

## COUNT VIII
## NEGLIGENCE AGAINST ALL DEFENDANTS

222. Plaintiff repeats and realleges paragraphs 1 through 128 above as if stated herein.

223. Defendants owed a non-delegable duty of care (a) not to allow Tongkat Ali and Fadogia Agrestris to be contaminated with Andro, (b) not to sell Plaintiff or anyone products that were contaminated with Andro, and (c), to disclose all ingredients truthfully on the labels of their products. Had the Defendants disclosed that Tongkat Ali and Fadogia Agrestris was or might be contaminated with Andro or any prohibited substance, the\n Plaintiff would not have ingested it.

224. Defendants breached that duty of care by permitting Andro to be present in Tongkat Ali and Fadogia Agrestris, causing the injuries and damages to Plaintiff.

225. The doctrine of *res ipsa loquitor* applies because the harm alleged would not ordinarily have occurred without negligence, recklessness or intent; the object that cause the harm was under the Defendant's control; and that there is no other plausible explanation for the existence of Andro in the Tongkat Ali and Fadogia Agrestris products.

226. As a proximate result of Defendants' negligence and carelessness, Plaintiff was severely injured, and suffered severe pain and anguish and damage to income and reputation in an amount to be determined by a jury.

227. Plaintiff suffered irreparable damage to his reputation and career, and severe emotional distress.

228. Plaintiff was a role model to children and adult martial artists and students. Since June 17, 2023, Plaintiff's reputation has been damaged, as evidenced, in part, by emails, media attention, and social media content from third-parties.

229. Plaintiff incurred lost revenue, lost past and future income, bodily injury by the

38

toxic undisclosed substance, resulting pain and suffering, mental anguish, inconvenience and loss of capacity for the enjoyment of life. These damages were experienced in the past and is to be experienced in the future, as well lost wages and earnings.

230. Plaintiff also incurred the risk of other disease and bodily dysfunction and future medical expenses as a result to the toxic substances he ingested. These medical expenses will reasonably include charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and other services.

WHEREFORE, Plaintiff, OVINCE SAINT PREUX, demands judgment against Defendants, JARED WHEAT, HI-TECH PHARMACEUTICALS, INC., HI-TECH NUTRACEUTICALS, LLC, JOHN DOES 1 – 5 and ABC CORPORATIONS 1 - 5, for compensatory damages, including interest, cost, and for such relief as this Court deems just and proper.

## COUNT IX
## BATTERY OR NEGLIGENT TOUCHING AGAINST ALL DEFENDANTS

231. Plaintiff repeats and realleges paragraphs 1 through 128 above as if stated herein.

232. Section 16-5-23.1 defines, "Battery" under Georgia law, as, "A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another."

233. Section 16-5-23 defines, "Simple battery" as, "A person commits the offense of simple battery when he or she either: (1) Intentionally makes physical contact of an insulting or provoking nature with the person of another; or (2) Intentionally causes physical harm to another.

234. Civil battery has been held to be a viable claim in this state.

235. Specifically, Georgia's statutory authority on battery makes clear that the intention of an individual to commit harmful or offensive contact is not important, only the intention to

39

commit a non-privileged touching. Greenfield v. Colonial Stores, Inc., 110 Ga. App. 572, 574-75 (1964).

236. Defendant essentially drugged Plaintiff with the specific intent to cause harm to Plaintiff so that he kept purchasing its products thinking his physical gains were due to bonafide or non-illegal means.

237. Additionally, and alternatively, one can be held labile for the intentional negligent touching of an individual if it causes damages.

238. Based on the allegations herein, Defendant intentionally put a known chemical in its supplements in order to chemically cause consequences to Plaintiff's body to make it seem like it was doing so naturally without said chemical.

239. By intentionally putting Andro in Plaintiff's body without his consent, it caused internal and external chain of harm, damage and injury.

240. By doing so, it also subjected Plaintiff to a series of unknown harms and losses, including damage to kidneys and other damages noted and alleged herein.

241. Plaintiff suffered irreparable damage to his reputation and career, and severe emotional distress.

242. Plaintiff was a role model to children and adult martial artists and students. Since June 17, 2023, Plaintiff's reputation has been damaged, as evidenced, in part, by emails, media attention, and social media content from third-parties.

243. Plaintiff incurred lost revenue, lost past and future income, bodily injury by the toxic undisclosed substance, resulting pain and suffering, mental anguish, inconvenience and loss of capacity for the enjoyment of life. These damages were experienced in the past and is to be experienced in the future, as well lost wages and earnings.

244.    Plaintiff also incurred the risk of other disease and bodily dysfunction and future medical expenses as a result to the toxic substances he ingested. These medical expenses will reasonably include charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and other services.

WHEREFORE, Plaintiff, OVINCE SAINT PREUX, demands judgment against Defendants, JARED WHEAT, HI-TECH PHARMACEUTICALS, INC., HI-TECH NUTRACEUTICALS, LLC, JOHN DOES 1 – 5 and ABC CORPORATIONS 1 - 5, for compensatory damages, including interest, cost, and for such relief as this Court deems just and proper.

### PUNITIVE DAMAGES DEMANDED

245.    Plaintiff repeats and realleges paragraphs 1 through 244 above as if stated herein.

246.    Plaintiff specifically pleads punitive damages in this matter. § 51-12-5.1. Punitive Damages.

247.    Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

248.    Punitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant.

249.    An award of punitive damages must be specifically prayed for in a complaint.

250.    The subject case is based in tort and product liability. As such, there shall be no limitation regarding the amount which may be awarded as punitive damages.

251.    The purpose of punitive damages is to deter the repetition of reprehensible conduct

41

by the defendant.

252.    Here, there is a clear pattern and practice of Defendants, but particularly Jared Sweat, Hi-Tech and their co-conspirators and affiliated companies to evade the law and put profits over people.

253.    Here, there is a clear pattern and practice of Defendants Sweat, Hi-Tech and their co-conspirators and affiliated companies to mislabel and engaged in deceit to put their financial gain ahead of their consumers health and safety.

254.    Here, Defendants Sweat, Hi-Tech and their co-conspirators and affiliated companies showed willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences.

WHEREFORE, Plaintiff, OVINCE SAINT PREUX, demands judgment against Defendants, JARED WHEAT, HI-TECH PHARMACEUTICALS, INC., HI-TECH NUTRACEUTICALS, LLC, JOHN DOES 1 – 5 and ABC CORPORATIONS 1 - 5, for compensatory damages, including interest, cost, and for such relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

WHEREFORE, Plaintiff, OVINCE SAINT PREUX, demands a jury trial against Defendants, JARED WHEAT, HI-TECH PHARMACEUTICALS, INC., HI-TECH NUTRACEUTICALS, LLC, JOHN DOES 1 – 5 and ABC CORPORATIONS 1 – 5.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF, OVINCE SAINT PREUX, seeks a judgment against Defendants for special damages, damages for past, present, and future medical expenses,

42

compensatory damages, exemplary and punitive damages, pain and suffering, and impairment of future earning capacity, together with attorney's fees and court costs and such other relief the as the Court may deem just and proper.

Dated this 22nd day of April, 2025.

Respectfully submitted,

**Law Office of Phillips, Hunt & Walker**

 **/s/ John M. Phillips**
**JOHN M. PHILLIPS, ESQUIRE**
Florida Bar Number: 0477575

 **/s/ William K. Walker**
**WILLIAM WALKER, ESQUIRE**
Florida Bar Number: 0085552
660 Park Street
Jacksonville, FL 32204
(904) 444-4444
(904)508-0683 (facsimile)
Attorneys for Plaintiff
jmp@floridajustice.com
william@floridajustice.com
anne@floridajustice.com

43