IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

OVINCE SAINT PREUX,

     Plaintiff,

        v.

JARED WHEAT, et al.,

     Defendants.

CIVIL ACTION FILE
NO. 1:25-CV-3342-TWT

## OPINION AND ORDER

This is a products liability case. It is before the Court on Defendants Jared Wheat, Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), and Hi-Tech Nutraceuticals, Inc.'s[1] ("Nutraceuticals") Motion to Strike [Doc. 4] and their Motion to Dismiss [Doc. 5]. For the reasons set forth below, Defendants Wheat, Hi-Tech, and Nutraceuticals's Motion to Strike [Doc. 4] is GRANTED, and their Motion to Dismiss [Doc. 5] is GRANTED in part and DENIED in part.

## I.    Background[2]

Plaintiff Ovince Saint Preux is a professional Ultimate Fighting Championship ("UFC") fighter who claims that two of Defendant Hi-Tech's

---

[1] The Complaint names "Hi-Tech Nutraceuticals, Inc." as a Defendant to this action, though the parties refer to the company as "Hi-Tech Nutraceuticals, LLC" in later briefing. The Court will use "Hi-Tech Nutraceuticals, Inc." for the purposes of the present motions, with the understanding that both labels refer to the same company.

[2] The Court accepts the facts as alleged in the Complaint as true for purposes of the present motions. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

dietary supplements were mislabeled and deceptively marketed such that they caused him to fail a drug test. (Compl. ¶¶ 87–92 [Doc. 1-2].) According to the Complaint, Preux consumed the supplements only after determining that the labels did not include any substances banned by the Controlled Substances Act, U.S. Anti-Doping Agency ("USADA"), or World Anti-Doping Agency. (*Id.* ¶¶ 87–88, 92.) Despite this diligence, Preux tested positive for illegal anabolic steroids[3] that were traceable to the Hi-Tech products. (*Id.* ¶¶ 95–102.) The USADA then imposed a "six-month sanction for [the] unintentional violation of the UFC's Anti-Doping Policy." (*Id.* ¶ 94.)

Thereafter, Preux filed suit against Hi-Tech, Jared Wheat (Hi-Tech's founder and CEO), Nutraceuticals (a supposed alias of Hi-Tech), and other unnamed Defendants. He claims that the Defendants' supplements and the subsequent USADA violation resulted in lost income, bodily injury, pain and suffering, mental anguish, inconvenience, loss enjoyment in life, and potential future risk of injury. (*See, e.g.*, *id.* ¶ 138.) His suit asserts nine claims: (1) negligence per se; (2) strict liability; (3) breach of express warranty; (4) negligent manufacturing defect; (5) breach of implied warranty of merchantability; (6) breach of express warranty; (7) breach of implied

---

[3] An anabolic steroid includes "any drug or hormonal substance, chemically and pharmacologically related to testosterone (other than estrogens, progestins, corticosteroids, and dehydroepiandrosterone)." 21 U.S.C. § 802(41)(A).

2

warranty of fitness for a particular purpose; (8) negligence; and (9) battery or negligent touching. The Defendants now move to strike and to dismiss the Complaint.

## II.    Legal Standard

Under Rule 12(f), the Court may on its own or by motion strike all or a portion of a "pleading" that contains "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally "disfavored," and courts regularly deny such "drastic" measures "unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697, 699 (S.D. Fla. 2013) (citation omitted); *Allen v. Life Ins. Co. of N.A.*, 267 F.R.D. 407, 410 (N.D. Ga. 2009) (citation omitted).

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in

the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that, at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.    Discussion

#### A.    Motion to Strike Prior Litigation History

The Court grants the Defendants' Motion to Strike paragraphs 18–71 of Preux's Complaint. Paragraphs 18–58 contain allegations of prior criminal indictments and injunctions sought by the federal government against the Defendants. Paragraphs 59–64 contain allegations about past civil suits involving the Defendants. Paragraphs 65–71 contain allegations of another UFC fighter's lawsuit against the Defendants. According to the Defendants, all of these allegations are unrelated to the present case and would unfairly prejudice the Defendants. (Defs.' Mot. to Strike, at 1 [Doc. 4].) The motion is unopposed, as Preux did not file a response. L.R. 7.1(B), NDGa ("Failure to file

a response shall indicate that there is no opposition to the motion."). The Court therefore grants the Defendants' Motion to Strike. *See Magluta v. Samples*, 162 F.3d 662, 665 (11th Cir. 1998) ("[G]ranting a motion on [no-opposition] grounds . . . lies within the discretion of the district judge."); *Irish v. Am.'s Servicing Co.*, 2012 WL 13013369, at *1 (N.D. Ga. Feb. 21, 2012).

### B. Motion to Dismiss Defendants Jared Wheat and Hi-Tech Nutraceuticals, Inc.

The Court dismisses Defendants Jared Wheat and Nutraceuticals from this suit. First, Preux has failed to state a claim against Wheat. Wheat is the founder, owner, and CEO of Hi-Tech. (Compl. ¶¶ 7, 34.) Preux argues that he is a proper party in this action because "[h]arm caused by [Hi-Tech] is harm caused by and at the discretion of Wheat." (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 10 [Doc. 7].) However, corporations are distinct legal entities from their officers and shareholders such that officers and shareholders cannot generally be held liable for the corporation's actions. *Heyde v. Xtraman, Inc.*, 199 Ga. App. 303, 306 (1991). That being said, a plaintiff may "pierce the corporate veil"—or disregard the separation—if it can "show[ ] that the corporate form has been abused." *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 289 (2005); *see also Factory Direct Wholesale, LLC v. Off. Kick, Inc.*, 2023 WL 6811026, at *3 (S.D. Ga. Oct. 16, 2023) (citation omitted) (noting that the alter ego doctrine applies to LLCs as well as corporations). Here, Preux does not allege that Wheat abused the corporate

form in any way. He therefore cannot pierce the corporate veil to hold Wheat liable for Hi-Tech's actions.

Second, Preux has failed to state a claim against Nutraceuticals. The Complaint states that Nutraceuticals is an apparent alias of Hi-Tech. (Compl. ¶ 6.) In briefing, Preux contends that the Defendants "fail[ed] to show any proof that [Nutraceuticals] is not directly related to the operations of [Hi-Tech]." (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 10.) At this stage, however, the Complaint must contain enough factual allegations as to plausibly involve Nutraceuticals. It fails to do so. Instead, where the Complaint refers to specific Defendants, it focuses only on Hi-Tech as the manufacturer and marketer of the dietary supplements in question. (*See, e.g.*, Compl. ¶ 84 (identifying the supplement manufacturer as Hi-Tech, not Nutraceuticals); *id.* ¶¶193–94 (describing warranties allegedly made by Hi-Tech, not Nutraceuticals).) For these reasons, the Court hereby dismisses Defendants Jared Wheat and Nutraceuticals as parties to this action.

### C. Motion to Dismiss Substantive Claims

#### 1. Choice of Law

The Court begins with choice of law. Federal courts under diversity jurisdiction apply the choice-of-law rules of the state in which they sit. *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014) (citations omitted). This Court applies Georgia's choice-of-law rules

accordingly. In Georgia, courts apply the procedural law of Georgia (*lex fori*) and the substantive law of the foreign state. *Fed. Ins. Co. v. Nat'l Distrib. Co.*, 203 Ga. App. 763, 765 (1992) (citations omitted). In applying a foreign state's substantive law, Georgia courts apply the law of the state where the tort was committed for tort claims (*lex loci delicti*) and the law of the state where the contract was made for contract claims (*lex loci contractus*). *Id.* One additional and notable feature of Georgia's choice-of-law rules is that Georgia courts may "apply only the statutory law of other states" and not the common law of other states. *Nationwide Prop. & Cas. Ins. Co. v. Renaissance Bliss, LLC*, 823 F. App'x 815, 822 (11th Cir. 2020) (per curiam) (citing *Frank Briscoe Co. v. Ga. Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983)). In other words, even if a tort was committed in another state, Georgia courts do not apply the substantive law of that state unless codified in statute. *Id.*; *see also Coon v. Medical Center, Inc.*, 300 Ga. 722, 728–35 (2017) (applying Georgia law under the common law exception, though the alleged tort was committed in Alabama). Here, it is undisputed that any alleged tort occurred in Tennessee and that any alleged contract was formed in Tennessee.[4] (*See* Compl. ¶¶ 2, 4.)

The Defendants have identified the Tennessee Products Liability Act ("TPLA") as the statute to which this Court must look. The TPLA codifies the

---

[4] The Complaint suggests that Preux purchased and ingested Hi-Tech's supplements in Tennessee, and the Defendants presume such in their briefing. Preux does not contest this fact.

state's products liability scheme and makes cognizable actions for "personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product." Tenn. Code Ann. § 29-28-102(6). The statute "supersede[s] common law claims for personal injuries stemming from alleged defects in products or failures to warn of the dangers associated with a product." *Coffman v. Armstrong Int'l, Inc.*, 615 S.W.3d 888, 895 (Tenn. 2021); *Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378, 392 (6th Cir. 2013). These include all common law products liability claims based on

> strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever.

*Id.*; *see also Woodruff ex rel. Woodruff v. Ford Motor Co.*, 2024 WL 2738197, at *7 (Tenn. Ct. App. May 28, 2024) (quoting *Coffman*, 615 S.W.3d at 895). Importantly, the TPLA governs all products liability claims—in the broadest sense of the term—even if a court finds the claim is not ultimately cognizable under the statute. *City of Franklin v. W.L. Hailey & Co.*, 634 S.W.3d 16, 27 (Tenn. Ct. App. 2019) ("[T]he Tennessee Supreme Court has made clear that a case can involve products liability [subject to the TPLA's requirements] without actually being cognizable under the [TPLA].").

8

Here, the Court construes all counts (Counts I–IX) as products liability claims subject to the TPLA's requirements. Each claim is alleged against the manufacturer (Hi-Tech) of an allegedly defective or misrepresented product (dietary supplements) for damages suffered by the buyer (Preux) from the product. Accordingly, all claims fall within the scope of the TPLA. *See Franklin*, 634 S.W.3d at 27; *Thompson v. Janssen Pharms., Inc.*, 2015 WL 12844455, at *2–3 (W.D. Tenn. Nov. 10, 2015) (holding the same for a negligence claim because it did not "derive[d] [its] existence from some occurrence not related to [the allegedly defective product]"); *Gritzmacher v. Danek Med., Inc.*, 1999 WL 33512267, at *5 (W.D. Tenn. Apr. 19, 1999) (applying the TPLA to breach of warranty claims based on an allegedly defective or dangerous product). The Court does not construe the Complaint as alleging claims under any other statute (e.g., Tennessee Consumer Protection Act of 1997). In the next section, the Court considers whether Preux's claims satisfy the requirements of the TPLA.

### 2. Tennessee Products Liability Act Requirements

#### a. Statute of Limitations

The Defendants seek to dismiss all products liability claims as barred by the TPLA's one-year statute of limitations. Tenn. Code Ann. § 29-28-103(a) (applying the one-year statute of limitations provided for in Tenn. Code Ann. § 28-3-104(b)(2) to TPLA claims); *see also Spence v. Miles Lab'ys, Inc.*, 810 F.

Supp. 952, 959 (E.D. Tenn. 1992) (applying the TPLA's statute of limitations to the plaintiff's common law negligence and strict liability claims arising from an allegedly defective product). According to the Defendants, Preux filed his Complaint more than one year after his cause of action accrued under the TPLA and is therefore unable to state any viable products liability claim. Preux filed his Complaint on April 22, 2025. The Defendants contend that Preux knew he ingested an anabolic steroid from Hi-Tech's supplements by at least September 18, 2023. (Defs.' Mot. to Dismiss, at 11–12 [Doc. 5].) That is the date that USADA announced Preux failed his drug tests due to taking Hi-Tech's supplements, which he specifically handed over to USADA for testing. (*See* Compl. ¶¶ 94–99.)

Preux offers two responses. He first asks this Court to apply Georgia's two-year statute of limitations rather than Tennessee's one-year statute of limitations, arguing that applying Tennessee's shorter period would contravene the public policy of Georgia. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 11–12.) He then contends that the Defendants' fraudulent concealment of their "history of violations, lies, mislabeling and criminal investigations" tolls the statute of limitations. (*Id.* at 13.)

The Court will apply Georgia's statute of limitations. Georgia's choice-of-law rules require this Court to apply the procedural law of Georgia. *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1361 (N.D. Ga. 2013) (quoting

*Nat'l Distrib. Co.*, 2032 Ga. App. at 765). Statutes-of-limitations are ordinarily considered procedural. *Harvey v. Merchan*, 311 Ga. 811, 814 (2021) (citing *Taylor v. Murray*, 231 Ga. 852, 853 (1974)). However, they may be considered substantive under the limited circumstance that the "foreign law creates a cause of action that is not recognized in the common law and includes a specific limitation period." *Id.* (quoting *Auld v. Forbes*, 309 Ga. 893, 895 (2020)). Persuaded by the reasoning of other courts, this Court finds that the TPLA does not create any new causes of action that were not already recognized at common law in Tennessee. *See Reece v. Intuitive Surgical, Inc.*, 63 F. Supp. 3d 1337, 1343 (N.D. Ala. 2014) (holding that the TPLA is "not a statute of creation" and therefore its statute of limitations is procedural under Alabama's choice-of-law rules); *Emley v. Wal-Mart Stores, Inc.*, 2019 WL 2642842, at *17 (S.D. Ind. June 27, 2019) (holding that the TPLA's statute-of-limitations is procedural under Indiana's choice-of-law rules); *cf. Thornton v. Cessna Aircraft Co.*, 886 F.2d 85, 87–88 (4th Cir. 1989) (treating the TPLA's statute-of-repose as substantive, in contrast to the statute's procedural statute-of-limitations). The Court therefore considers the TPLA's statute-of-limitations as procedural and will apply Georgia's statute of limitations instead. *See id.*

The parties do not dispute that the applicable statute of limitations in Georgia would be two years. (*See* Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 11 (citing *Forbes v. Auld*, 351 Ga. App. 555, 560 (2019), *vacated in*

*part on other grounds*, 358 Ga. App. 162 (2021)); Reply Br. in Supp. of Defs.'
Mot. to Dismiss, at 3–6 [Doc. 8].) Preux filed this suit in April 2025. Assuming
that Preux's cause of action accrued in September 2023, as the Defendants
claim, this suit falls well within the statute of limitations. The Court need not
reach Preux's additional arguments regarding Georgia's public policy
exception and the tolling of the statute of limitations.

### b. Economic Damages

The TPLA precludes recovery for the economic damages that Preux
seeks. Across all counts, Preux seeks economic damages in the form of lost
revenue and income. (*See, e.g.*, Compl. ¶ 138; *see also id.* ¶ 82 ("The six-month
suspension not only cost him [UFC] fight revenue, but marketing opportunities
. . . and ridicule.").) But the TPLA defines products liability actions as only
those "brought for or on account of personal injury, death or property damage."
Tenn. Code Ann. § 29-28-102(6). It does not afford recovery for economic losses,
such as damage to the product itself or other lost profit or income. *Lincoln Gen.*
*Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 491–92 (Tenn. 2009) (citing
*Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 132–33 (Tenn. 1995)). As
such, any recovery for Preux's allegedly lost earnings is unavailable under the
TPLA.[5] Preux does not contest this fact. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot.

---

[5] Preux cannot otherwise maintain a non-TPLA action for purely
economic losses. Tennessee's economic loss doctrine bars recovery in tort for
purely economic damages, and recovery in contract for purely economic

to Dismiss, at 6.) The Court therefore dismisses Preux's products liability claims (Counts I–IX) to the extent they request damages in the form of lost wages and earnings. This dismissal does not apply to other types of relief requested within those counts.

### c. Amount of Damages

The Defendants seeks dismissal of Preux's Complaint on the grounds that it does not specify a damages amount, as required by the TPLA. The TPLA provides: "[a]ny complaint filed in a products liability action shall state an amount of such suit sought to be recovered from any defendant." Tenn. Code Ann. § 29-28-107. In response, Preux acknowledges that he did not specify an exact number but argues that such a figure is not required at the pleading stage. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 5–6.) He further states that the Complaint sufficiently puts the Defendants on notice of the kinds of damages sought and to be further developed during discovery. (*Id.*)

The Court agrees that the TPLA requires the Complaint in this action to specify a damages amount. To remedy this error, the Court grants Preux

---

damages is barred unless contractual privity exists between the plaintiff and defendant. *Franklin*, 634 S.W.3d at 20; *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 463 (Tenn. Ct. App. 2003) (citation omitted). No contractual privity exists here because Preux allegedly purchased the supplements from a "nutritional shop" rather than directly from the Defendants. (Compl. ¶ 208.) Even if Georgia law required a different result, the Court declines to read such a difference in state law as so substantial as to necessitate applying Georgia law. *See Auld*, 309 Ga. at 896.

fourteen days from the date of this Order to amend the Complaint to state a damages amount. *See Jones v. Walgreen Co.*, 2005 WL 8175476, at *2 (M.D. Tenn. Nov. 30, 2005) (granting leave to amend to allow compliance with Tenn. Code Ann. § 29-28-107); *Walker v. Louisville Ladder, Inc.*, 2009 WL 10674930, at *1 (E.D. Tenn. Jan. 23, 2009) (same). Failure to timely amend may result in dismissal of the Complaint.

### d. Product Misuse

Under the TPLA, a manufacturer is not liable for a product that "is not unreasonably dangerous at the time it leaves the control of the manufacturer or seller but was made unreasonably dangerous by subsequent unforeseeable alteration, change, improper maintenance or abnormal use." Tenn. Code Ann. § 29-28-108. The Defendants seize on the "abnormal use" language to argue that they are not liable because Preux "misused" their products. (Defs.' Mot. to Dismiss, at 14.) Specifically, they argue that Preux used the products to prepare for his UFC fight even though the USADA warns against ingesting products listed as steroid-free that claim to boost testosterone and strength, which is the case here. (*Id.* at 14–15.)

The Court is not persuaded by this argument. Rather than taking the products for an "abnormal use," Preux apparently took the products for an entirely normal and envisioned use—the advertised increases to testosterone and strength. Although Preux may have ingested the Defendants' products in

14

a manner prohibited by USADA, it appears that he ingested the products in a manner consistent with the product labeling and did not otherwise alter or modify the products. In other words, the "defect" in the products—that they contained steroids but were not labeled as such—was present at the time of manufacturing and not introduced by Preux's later use. *See Coffman*, 615 at 896 ("[A] manufacturer's duty to a consumer is measured at the time the product leaves its control."). Therefore, the Court declines to dismiss Preux's products liability claims on a misuse theory.

### 3. Risk of Future Injury

The Court grants the Defendants' Motion to Dismiss as to Preux's risk of future injury. In each count, Preux alleges he "incurred the risk of other disease and bodily dysfunction and future medical expenses as a result [of] the toxic substances he ingested." (Compl. ¶¶ 139, 151, 165, 177, 190, 204, 221, 230, 244; *see also id.* ¶ 240 (alleging that he has been "subjected . . . to a series of unknown harms and losses, including damage to kidneys and other damages").) To support this alleged injury, the Complaint outlines various health problems that can arise from "doping," including kidney failure, liver damage, psychiatric disorders, and increased risk of stroke and heart attack. (*Id.* ¶¶ 105–06.) The Defendants argue that the risk of future injury of this sort is merely speculative, and the Court agrees. Nothing in the Complaint indicates that Preux sustained any sort of bodily injury in the two years

between taking the dietary supplements and filing his complaint. While health complications can arise years after an inciting incident, the total absence of any alleged health problems—big or small—in those two years keeps Preux's risk of future injury in the realm of mere possibility, not plausibility. *See Twombly*, 550 U.S. at 555. For these reasons, the Court dismisses all counts (Counts I–IX) to the extent they allege a risk of future injury.

### 4. Battery (Count IX)

In this count, Preux alleges civil battery and "negligent touching" under Georgia law.[6] The Court makes two initial notes. First, because Tennessee tort law applies, the Court will construe this count as a claim under Tennessee law. Second, while civil battery is an established tort in Tennessee, Preux has not identified nor is the Court aware of any authority establishing the tort of "negligent touching" or, as the Court supposes, unpermitted touching without the element of intent. The Court therefore construes Count IX solely as a claim for the intentional tort of battery.

In Tennessee, the tort of civil battery is "an intentional act that causes an unpermitted, harmful or offensive bodily contact." *Spearman v. Shelby*

---

[6] Confusingly, Preux alleges civil battery but cites Georgia statutes providing for criminal battery. (*See* Compl. ¶ 232–35.) The Court nonetheless construes Preux's Count IX as a claim for civil battery. Civil battery is an actionable cause of action in both Tennessee and Georgia. *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 57 (Tenn. Ct. App. 2013); *Hendricks v S. Bell. Tel. & Tel. Co.*, 193 Ga. App. 264, 264–65 (1989).

*Cnty. Bd. of Edu.*, 637 S.W.3d 719, 734 (Tenn. Ct. App. 2021) (quoting *Lacy v. Hallmark Volkswagen Inc. of Rivergate*, 2017 WL 2929502, at *4 (Tenn. Ct. App. July 10, 2017)); *Cary v. Arrowsmith*, 777 S.W.2d 8, 21 (Tenn. Ct. App. 1989) ("A battery necessarily requires an unpermitted touching of the plaintiff by the defendant or by some object set in motion by the defendant." (citation omitted)). While "not every physical contact that is unconsented to is so offensive" as to "amount[ ] to a battery," Tennessee courts broadly construe offensive contact as contact that "infringes on a reasonable sense of personal dignity ordinarily respected in a civilized society." *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 57 (Tenn. Ct. App. 2013); *Lacy*, 2017 WL 2929502, at *4 (citations omitted). Because the Plaintiff fails to allege any action by the Defendants that meets this standard of offensive conduct, Count IX will be dismissed.

### 5. Breach of Express Warranty (Count VI)

In Count VI, Preux alleges that the Defendants breached express warranties of two types. First, he alleges that Hi-Tech's website contains "several promises and warranties," including that Hi-Tech's products are "world-class," "set[ ] a higher standard of scientific excellence," and create "a positive experience." (Compl. ¶¶ 194–95.) Second, he alleges that Hi-Tech represented that it "runs a certified, approved, good facility" because it provided a certification of its "current good manufacturing practices." (Compl.

¶ 193.) Preux contends that both kinds of representations were false because the supplements were, among other things, "below fair" and "average." (*Id.* ¶ 199.)

Neither of these types of representations can support a breach of express warranty claim. As an initial matter, the website representations are nonactionable puffery. *See McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982) ("Puffing or other sales talk is generally not actionable." (citation omitted)). Puffery entails "loose general statements" and "exaggerations" that a company may use to sell its products; they are not meant to be representations of fact, and "[b]uyers have no right to rely on [them]." *Ladd by Ladd v. Honda Motor Co.*, 939 S.W.2d 83, 100 (Tenn. Ct. App. 1996). The representations cited by Preux (e.g., "world-class," "scientific excellence," "a positive experience") are classic examples of puffery. *See, e.g.*, *id.* (categorizing representations such as "dandy," "pride of our line," and "best in the American market" as puffery); *Audio Visual Artistry v. Tanzer*, 403 S.W.3d 789, 811–12 (Tenn. Ct. App. 2012) (categorizing representations that certain products were "superior" as puffery).

For the remaining representations regarding Hi-Tech's certified facility, Preux has failed to allege that the representation is untrue or that he relied on it. The Complaint contains no allegations that Hi-Tech's facility was not certified as represented. Additionally, Preux must allege actual reliance on the

false representation in order to support his breach of express warranty claim. *Coffey v. Dowley Mfg., Inc.*, 89 F. App'x 927, 932 (6th Cir. 2003) (citing *Tatum v. Cordis Corp.*, 758 F. Supp. 457, 463–64 (M.D. Tenn. 1991)). But the date of Preux's failed drug tests (2023) predates the audit date on the certificate (2024) incorporated into the Complaint. Preux's response brief attempts to argue that Preux relied on a prior version of the audit, (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 8), but the Court must assess the Complaint as pleaded. The Court therefore dismisses Count VI in its entirety.

## IV.    Conclusion

For the reasons set forth above, Defendants Jared Wheat, Hi-Tech Pharmaceuticals, Inc., and Hi-Tech Nutraceuticals, LLC's Motion to Strike [Doc. 4] is GRANTED as unopposed, and their Motion to Dismiss [Doc. 5] is GRANTED in part and DENIED in part. The Motion to Dismiss is granted as to Defendants Wheat and Hi-Tech Nutraceuticals, LLC, Counts VI (breach of express warranty) and IX (battery) in their entirety, and all counts to the extent they request damages for purely economic losses and the risk of future injury. It is denied as to all other relief requested therein. Preux is DIRECTED to file an amended complaint striking the challenged portions identified, omitting the dismissed counts, and stating a damages amount as required by Tenn. Code Ann. § 29-28-107 within fourteen days of the date of this Order. Failure to do so may result in dismissal of the Complaint.

SO ORDERED, this ____5th____ day of February, 2026.

THOMAS W. THRASH, JR.
United States District Judge